**In re SURRETTE STORAGE BATTERY CO., INC., Debtor.**

**Dennis G. BEZANSON,**
**Trustee, Plaintiff,**

v.

**ATLANTIC BATTERY CO., INC., Bruce Migell, Tilton Trust, and Clark Neill, Defendants.**

**Bankruptcy No. 87–74.**
**Adv. No. 88–91.**

United States Bankruptcy Court,
D. New Hampshire.

Dec. 28, 1989.

Edmond Ford, Manchester, N.H., for trustee.

Dennis Bezanson, South Portland, Me., Trustee.

Melanie Strigel, Portsmouth, N.H., for Atlantic Battery; Bruce Migell; and Tilton Trust.

James Raymond, Concord, N.H., for Clark Neill.

MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This chapter 11 adversary proceeding involves a complaint filed by the trustee against the defendants for turnover of property, trustee "strong-arm" recapture, fraudulent conveyances, preferential transfers, and equitable subordination. Defendants Atlantic Battery Co., Inc., Bruce Migell and Tilton Trust have moved for summary judgment on all counts primarily on the grounds of res judicata. This opinion

decides the res judicata issue. This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(E), (F), (H), and (O), and the general reference order dated February 1, 1985 by the U.S.District Court for the District of New Hampshire. This matter came on for a hearing on August 1, 1989, and I then took the matter under submission.

## STATEMENT OF FACTS

1. On February 24, 1987, an involuntary petition was filed against debtor Surrette Storage Battery, Inc. Surrette was a Massachusetts corporation in the business of manufacturing and selling lead acid storage batteries until it sold most of its assets on November 28, 1986 to Atlantic Battery Co., Inc. Surrette's principal place of business was Northfield, New Hampshire.

2. Clark Neill was the President of Surrette until the November 28, 1986 sale. Then, he became a consultant of Atlantic until December 31, 1987.

3. Atlantic is a Massachusetts corporation in the business of manufacturing and selling storage batteries.

4. Bruce Migell is the President of Atlantic. Migell's family owns all of the stock of Atlantic.

5. Migell is the trustee of Tilton Trust. The beneficiaries of the trust are not a matter of public record.

6. On December 20, 1985, Atlantic entered into an agreement with Surrette for capital contributions of up to $100,000 in exchange for 75 percent of the stock of Surrette. Neill and Migell now characterize this as a "stock option" agreement.

7. Between December 20, 1985 and March 1986, Atlantic transferred $100,000 in cash to Surrette, which was originally recorded in the books as a capital contribution.

8. Between December 20, 1985 and November 28, 1986, Atlantic shipped approximately $94,000 worth of batteries to Surrette for which Atlantic may not have received payment.

9. Sometime in 1986 the cash paid by Atlantic was changed in the bookkeeping of Surrette from a capital contribution to debt. Neill states this was because Migell decided not to exercise the "stock option."

10. On October 9, 1986, a mortgage purportedly securing a note of $200,000 was given by Surrette to Atlantic.

11. For several months before the November 28, 1986 sale of assets it is disputed whether Migell exercised any control over the business of Surrette.

12. On November 28, 1986, most of the assets of Surrette were exchanged to Atlantic for an assumption of all secured debt.

   a. The secured debt was as follows:

| Indian Head Bank | $229,399.00 |
| SBA Loans | $124,982.00 |
| Revolving Loan | $141,661.00 |
| Company Car Loan | $ 1,581.00 |
| Atlantic Loan | $198,500.00 |
| | $696,131.00 |

   b. The first Bill of Sale in the transaction conveyed all accounts receivable, the tradename, and machinery and equipment in exchange for secured indebtedness in the amount of $204,641.79.

   c. The second Bill of Sale conveyed all inventory with the exception of that listed in an attached schedule A in exchange for secured indebtedness in the amount of $106,488.77. The percentage of the inventory conveyed is a matter of dispute, but this Court determined in a prior hearing it was 48 percent of Surrette's total inventory.

   d. By a separate agreement, all of Surrette's real estate was transferred to the Tilton Trust by Warranty deed.

   e. Migell agreed to indemnify Clark and Joyce Neill for any claims or liability arising out of their personal guarantees of the debt of Surrette to Indian Head Bank and the SBA.

13. The November 28, 1986 transaction did not expressly convey the goodwill or trade secrets of Surrette. However, Neill states he believed the transaction conveyed with it the goodwill.

14. Since the November 28, 1986 transaction, Atlantic has not caused an assignment of Surrette's tradename and related trade-

marks to be filed with the U.S. Patent and Trademark Office.

15. On May 27, 1987, the prior trustee sued the current defendant under the Bulk Sales Act to avoid the transfer of inventory in the November 28, 1986 transaction. See Adversary No. 87–108. On March 1, 1989, this Court denied the trustee's motion for summary judgment and granted Atlantic's motion for summary judgment. On June 2, 1988, this Court denied certain petitioning creditors' motion to reopen. No appeal was taken of any of these orders.

## TRUSTEE'S COMPLAINT

On February 8, 1989, the successor trustee brought a 21 count amended complaint against the named defendant. Count 1 seeks a turnover of the goodwill and trade secrets of Surrette pursuant to § 542(a), which allegedly were not conveyed to Atlantic. Count 2 seeks turnover of the tradename and trademark "Surrette" which allegedly could not be conveyed to Atlantic without the goodwill. Count 3 seeks to obtain the tradename/trademark "Surrette" under § 544(a)(1) because a filing of the transfer to Atlantic has never been made with the U.S. Patent and Trademark Office. Count 4 seeks recovery of the tradename/trademark under § 548(a)(2) because "reasonably equivalent value" was not given for it in the November 28, 1986 transaction. Count 5 seeks recovery of the tradename/trademark under § 547 because the transfer was allegedly made on account of the antecedent debt Surrette owed Atlantic. Count 6 seeks to avoid the mortgage granted Atlantic as a preferential transfer under § 547(b). Count 7 claims the mortgage to Atlantic was a fraudulent transfer under § 548(a)(2). Count 8 claims that the transfer of tangible personalty on November 28, 1986 was a preferential transfer. Count 9 asserts that the sale of inventory was a fraudulent conveyance. Count 10 claims the transfer of the equipment and machinery was a fraudulent conveyance.

Count 11 alleges that the real estate conveyed to Tilton Trust was a fraudulent transfer under § 548(a)(1) because it was made with an intent to defraud creditors. Count 12 claims the real estate transfer is a fraudulent conveyance under § 548(a)(2). Count 13 alleges the transfer of the real estate is voidable under § 544(b) because an unsecured creditor could avoid the transaction under N.H.Rev.Stat.Ann. § 545–A:5(II), which is the state fraudulent transfer law. Count 14 seeks to avoid the transfer of assets under § 548(a)(1) as a transfer of an insider (Atlantic) with the intent to defraud creditors. Count 15 states that the transfer of assets is voidable under § 544(b). Count 16 claims that the indemnity agreement the Neills received is a dividend under Massachusetts law which the creditors should receive under § 544(b).

Count 17 seeks to equitably subordinate Atlantic's claims pursuant to § 510(c). Count 18 seeks to equitably subordinate the Trust's claims. Count 19 seeks to equitably subordinate Migell's claims. Count 20 seeks to equitably subordinate Neill's claims. Count 21 claims that the proper corporate authority was not obtained for the transfer of assets.

On June 9, 1989 Atlantic, Migell and Tilton filed a motion for summary judgment. On July 6, 1989, plaintiff filed a cross-motion for partial summary judgment. Specifically, the trustee sought relief under counts 1–3.

## THE RES JUDICATA QUESTION

The question before me is whether the trustee's complaint is barred by res judicata against defendants Atlantic, Migell and Tilton Trust because the prior trustee had already attempted to attack the November 28, 1986 transaction and failed. There is no dispute that the first suit was a "final" decision "on the merits", see *Merrimack Street Garage, Inc. v. General Motors Corp.*, 667 F.Supp. 41 (D.N.H.1987). The dispute in this case is whether the second suit is based on the same underlying facts. The decisive case on this issue is *Manego v. Orleans Bd. of Trade*, 773 F.2d 1 (1st Cir.1985). In this case, the First Circuit adopted a "transactional" approach to res judicata questions. The Court adopted the

Restatement (Second) approach which is defined as follows:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24 (1982).

The Court explained its interpretation of this rule as follows:

... the mere fact that different legal theories are presented in each case does not mean that the same transaction is not behind each.

\* \* \* \* \* \*

Nor does it matter in this case that the named defendants are not identical.

\* \* \* \* \* \*

[T]he focus of a "transactional" analysis is not on whether a second claim *could* have been brought in a prior suit, but whether the underlying facts of both transactions were the same or substantially similar.

*Manego, supra* at 6.

A subsequent First Circuit case illustrates the *Manego* ruling. In *Dowd v. Society of St. Columbans,* 861 F.2d 761 (1st Cir.1988), a priest sued a religious group originally for contract claims concerning medical and financial obligations while doing missionary work. After losing, he sued again alleging that negligence during his employ as a missionary caused a disability.

The First Circuit held res judicata applied. The Court reasoned:

In applying res judicata, we have used a transactional approach to evaluate similarity of claims. In effect, we have attempted to determine whether the new complaint grows out of the same transaction or series of connected transactions; in doing so we ascertain whether the underlying facts are related in time, space, origin, or motivation.

*Id.* at 763.

Applying the transactional analysis to this case, I believe the trustee's suit is grounded in the same "series of connected transactions" as the prior trustee's suit. The prior trustee attempted to void one aspect of the November 28, 1986 transaction by bringing a Bulk sales Act complaint. The current trustee attempts to attack elements of the November 28, 1986 deal as well as events since December 20, 1985, like the issuance of a mortgage. Yet, all the events between December 20, 1985 and November 28, 1986 can be viewed as a "series of connected transactions". The trustee's own pleading admits this in paragraph 9 of the objection to Atlantic's Motion for Summary Judgment where it is stated:

The essence of the transactions of November 28, 1986 was the payment of an insider's trade debt and the return of an insider's capital contribution before any unsecured creditors were paid.

Indeed, the Restatement states that in determining if a series of connected transactions exists a court must look at "whether they form a convenient trial unit." Restatement, *supra.* I believe all the events from December 20, 1985 to November 28, 1986 should have been examined in one trial to understand what happened on November 28, 1986. The fact that the prior trustee did not do so may raise a question of nonfeasance, but should not prejudice the defendants.

## CONCLUSION

Plaintiff trustee is barred by res judicata from pursuing its claims against Atlantic, Migell, and Tilton Trust. Summary judg-

548

ment is granted for these defendants. The summary judgment motion of Clark Neill shall be scheduled for hearing.